Next case we'll call is 4-21-0714. Lee v. Weiland, Weiland. Counsel for the appellant, could you please state your name for the record? Thank you. And counsel for Applee, could you please state your name for the record? Gregory Burg. Counsel for the appellant, you may proceed. Good morning. May it please the court. This action was brought for personal injury sustained by 12-year-old Francesca Lee, who was hit by driver Brian Weiland as she was crossing the road. The trial court granted summary judgment on behalf of the defendant, finding that this was an unavoidable collision. The trial court alternatively found that Francesca was over 50% at fault for her injuries. So the issues for review are whether there was a genuine issue of material effect, as to questions of proximate cause and comparative fault. So I'll start with proximate cause first. As I'm sure the court is aware, the incident happened on a clear Friday afternoon on a residential street in front of a house where there was an ongoing party for 50 people, including children and their families. There is substantial evidence in the record that it would have been foreseeable at that time for a child to enter into the street, leaving genuine... Why would it be foreseeable? So taking into the totality of the circumstances, the composite of everything that was going on in front of that house and to the side of that house... Not in the front? I thought everybody said people were actually in the back of that. So part of the party was going on in the back of the house. There were people, there's testimony that there were at least two people in front of the house. There were cars parked all through the driveway, the semi-circle driveway, and there were food tents set up on the west side of the house. That would have been visible for a driver coming from the western direction heading eastbound. That would have been visible for a driver heading that direction. So... I'm curious, did any witness say that? In other words, did any witness indicate that from the vantage point of a driver proceeding eastbound on East Washington Street, one would have seen the presence of party goers in the tents? So there is no explicit testimony that someone coming from that direction could have seen that, but there is no testimony otherwise. There is no reason that someone coming from that direction would not have been able to see... We have to base our decisions on what's in the record. So what you're saying is there's nothing in the record in response to Justice Harris' question. There's nothing in the record indicating that a driver coming from that direction, the direction that the plaintiff was driving, or the defendant was driving, would have seen any of this. Nobody testified to that. Nobody testified that there was no... No one would have seen that, but there is no testimony indicating that any view from that area would have been blocked. In the alternative, even if there was a witness testimony that you could have seen the party goers in the tents, perhaps there could be photographs, sightline photos, depicting the position of a defendant as he approached that would then also identify where people were located and where the tents were located. Are there any such photos in the record? Not to my knowledge, Your Honor. Thank you. So as the driver is heading eastbound on Washington that afternoon, there is testimony that there are multiple people in front of the Fitzpatrick house where the party is ongoing. There's testimony from Francesca herself that she was walking at some point from the backyard area to the front sidewalk in front of the house. There's testimony that Michael Julian, who was also present at the party, had just dropped off his wife and children with their food at the food tent on the west side of the house. He was walking from the house to the sidewalk that afternoon. There's also testimony that the semi-circled driveway was full of cars. And again, the food tents were set up on the west side of the house. So taking all of that together, that presents a genuine issue of material fact as to whether someone driving down the road that day should have been keeping a proper lookout, probably anticipating the presence of children, and just paying better attention. Further, there is no evidence suggesting that at the time leading up to when the defendant was in front of the Fitzpatrick house and before the collision happened, that his view of Francesca as she was walking on the sidewalk was blocked. Well, didn't the Kings both say that she was standing in front of their van? She wasn't visible to anybody from the street. So they did say that she was standing on the curb, on the grass, in front of the house on the sidewalk. They also do testify that she is standing in front of his van. But there is also testimony that she is walking in the front yard. There's testimony that another pedestrian who was in the front yard passes her and sees her. When did that happen, though? Because the defendant is driving. So he's some distance away while all of this is happening, and she's walking. And then she, at some point, is positioned in front of the van. So when she's in the yard and potentially visible to a motorist, where was defendant located? There is testimony that he would have been two to three car lengths behind the van that had stopped there where the driver testified that she was standing in front of those. Well, that would have been when she was actually positioned in front of the van, correct? Yes, Your Honor. And I'm talking about when you're saying that she would have been visible to a driver when she was walking across the grass. Where would defendant have been at that time, or do we know? We don't know, and that would be a great question for a jury. Or a witness to have been deposed, but we don't know. Right, Your Honor. Okay. So taking into account the continuing ongoings of everything that's happening in the front yard and to the side yard of the Fitzpatrick house, there is that genuine issue of material fact as to whether someone in the driver's position should have been paying better attention. So what you're asking is that the trial court should have speculated this as opposed to listening to the testimony of the witnesses like Ms. King who said who was right there. I mean, we agree that Ms. King was in that vehicle that the plaintiff was directly in front of, right? I'm not asking the trial court to speculate. Just answer the question first and then we'll get there. I'm sorry, no. Ms. King was in the vehicle that the child was in front of. I'm sorry, Your Honor, yes. Okay. She testified that she observed all of this and believed there was nothing the defendant could have done to avoid striking Francesca. She stated, this young girl was in front of our car, did not look before crossing the street, and I kept thinking there was no way that person who was driving that vehicle could have seen her. Correct? That is what she testified, yes. Okay. So the court has before it actual witness testimony that the girl didn't look, she just took off running across the street, and that people who were right there opined there was nothing that this man could have done to avoid hitting her, but you're saying that the court should instead speculate based on the fact that there's a party going on that that somehow creates a genuine issue of material fact. So there is, well, there is testimony from Christy King saying that Francesca did not look before she crossed the street and just ran out, leaving the defendant no opportunity to avoid hitting her. There also is testimony from Francesca herself that she did look before she crossed the road. She was looking in the western lane. She looked to her right. Yes, and that is because... She couldn't see to her left because she's in front of the van, and she says, I always run across the street, right? She did say that she always runs across the street, but then she later clarified that a run means a light jog. Either way, she does something more than just walk across the street. Yes. She always runs across the street. I'm sorry, no, go ahead. Well, we know that according to her testimony, she looked left because she said she saw the red truck coming, but thought that she could beat it, right? Yes. Okay. So at some point, she looked to her left, but we don't know just prior to her running across, did she look left again to see just how close it was? Any testimony, evidence indicating at what point she looked left again if she did? So if she would have looked left, this is getting a little bit into the comparative fault, but she would have looked left to see the driver of the van who had stopped there in front of the house in the no-parking lane wave her across the road. Now, he denies doing that. And she says that he did. And the wife denies that he did that. Two people in the car say that didn't happen. So that leaves a genuine issue of material fact as to whether or not she should have reasonably relied on that based on her testimony. She is testifying that she has crossed the road plenty of times before, and as she was doing so this time, after she had looked to the right to the lane of westbound traffic, she looked to the left and saw the driver of the van wave her across. She felt that it was fine. To find a general, pardon me, an issue of material fact in that scenario, do we have to find the two people in the vehicle not credible? That would be a question for a jury. That's not something that the trial court should have weighed at this stage. For sure, we have to weigh, the trial court has to weigh whether or not there's this issue. And so, just thinking through the whole idea of two people, perhaps for their own culpability, denying there was a wave. I'm sorry, I missed your question. That's okay, continue. You can continue. It's something I'll work through. Counsel, following up on Justice Kavanaugh's thoughts here, is Andrew King who is the driver of the van, right? Yes, Your Honor. Francesca testified that she saw him wave her across, what she interpreted to be him waving at her, and I think the implication, at least an argument in the briefs, is that he was waving her across the road, right? Yes. Has Mr. King been made a defendant in this case? Not to my knowledge, Your Honor. I guess I can't speak to what happened before. Counsel may have a better explanation. Okay, thank you. Okay, so moving on from everything that's happening in front of the house, Brian Wieland, he was driving behind this passenger van that had pulled over to stop in a no-parking area on the curb in front of the house. He was several car lengths behind, and he himself creates a genuine issue as to what the speed was, what his speed was as he drove around this van while remaining in the same lane. At several points, he says he was going... You say that they're in the same lane, but according to the police officer, there's enough room when you pull over next to the curb for the driver of the truck to have continued on in his lane of traffic just as he had before, correct? Yes. Because the brief made it sound like there's a vehicle parked in the lane and that he had to somehow swerve around that vehicle to proceed, and that's not what the facts were. So there's a designation in the middle of East Washington, or eastbound and westbound traffic, and there is no parking designation on the curb in front of the Fitzpatrick house. So the van would have parked there, and then Brian Wieland would have had to drive around, and he says he remained within that lane. Did you state there's no line designation for parking? I just couldn't hear you. Did you say there is or there isn't? There is not. So instead of pausing to consider why this van had stopped and pulled over in front of this house, the defendant says at various points that he slowed down to 25 or 30 miles per hour, or he slowed down to 10 or 15 miles per hour as he passed that van. So whether or not he was driving too fast for conditions is also a genuine issue of material fact. Did any witness testify that the truck seemed to be traveling at a high rate of speed or higher than the closest speed limit? No. In your brief, you place, in the reply brief, you place primary emphasis on the first district case, and is it Mirka v. Rhodes or Mercer v. Rhodes? Yes, Your Honor. The appellate court there reversed summary judgment and found that there were triable issues of fact, correct? Yes, Your Honor. Putting aside what it found to be issues relative to the driver's conduct, the driver's speed, it highlighted the conditions or the circumstances that the driver was faced with. Specifically, it was a high school in the area, and there was maybe because of that and other circumstances, something about the conditions that would have placed the driver on alert that there could be pedestrians crossing. What do we know or what would you suggest is the most favorable set of facts that you can give to us about what the circumstances or conditions were here that would have placed Mr. Whelan on heightened alert that potentially pedestrians could be crossing in that particular spot? So drawing similarly from Mirka, it was in an area where the defendant driver should have anticipated the presence of children. In here, there was a party ongoing. There were people in the front. There were cars parked through this driveway. But they're all on one side of the street. Why does that somehow then cause a reasonably cautious driver to believe that people... It's not like there's a party over on one side and there's a party on the other side or all one big party and there are people moving back and forth. There was no testimony that there were more than just a couple of people that might have been in the front yard. Was there? No, Your Honor. Okay. So there's a party all taking place on one side of the street. What does that have to do with someone then having to believe that there may be children darting across the street? This is also a residential area at the end of summer. It's sunny out and clear out and school is about to start the next week. So taking that into account, anticipating the presence of people and children, and the defendant through testimony saying that he was driving within the speed limit like the defendant driver in Merca claimed she was driving, this is why these cases are the same and factually and prestigiously the same. So the issue there was that the driver claimed it was an unavoidable collision in that case and based on those circumstances, very similar to what we have here, it provides the proper guidance as to why the summary judgment should be reversed. So regarding the issue of comparative fault, this is also something that should not be, this is rarely decided as a matter of law. This is a very fact-intensive analysis and the determination of what is contributorily negligent by Francesca is a composite of all the circumstances. And our circumstances present a genuine issue of material fact. Going again back to her testimony where she looked across the street. She had crossed the street before. She had gone over to the Fitzpatrick house. She testifies that she was waved on by Andrew King despite Andrew King and Christy King's denial of that. She was 12 years old at the time and whatever he may have done in his car, it would have been fair for her to reasonably rely on those indications of that adult driver. But as Justice Harris pointed out, she testified that she saw the red truck coming and she thought she could make it. So she at some point saw the truck. She could see where it was. She could see how fast it was traveling. She knew where she was and she knew where she was going and she decided she could make it. Those were her decisions, not because somebody waved her on. I see my time has expired. Let me answer the question. So this would need to be analyzed from or you would need to look at this from the point of a 12-year-old girl understanding that her experiences and her age are playing into this. She's young and she's looking at an adult and is relying on what his indications are. Thank you. Thank you, Counselor. We'll have an opportunity on rebuttal. Mr. Berg. I'm going to try this and hope it doesn't slide. May it please the Court, Counsel. I'm not going to belabor the facts, but I do think we need to go over some of the facts that are actually not at issue. You pointed out some of the facts already that were highlighted in the plaintiff's briefs in the appellant brief that were inconsistent with what was in the deposition transcript. The only facts this Court is able to consider are those that come from the pleadings, depositions, admissions on file, or affidavits on file, if any. They have to be more than just unsupported assertions. Plaintiff's assertion in its brief, as you pointed out, that Andrew King stopped his van in the driving lane is not supported by any deposition testimony or admissions or affidavits on file, and therefore it's not a fact to be considered by this Court. This is only one of several unsupported non-factual assertions by the plaintiff in their brief, and when non-facts are the only support for an argument, that argument must fail. This is another interesting suggested inference that's not supported by any of the testimony. If you read through his deposition testimony, he wasn't asked that question. He wasn't asked that question. He was running late from work that day, and his testimony was, pretty much every day during that week, I'd go to my son's football practice. He didn't say anything about picking up his son, which is what's alleged or asserted in the appellate brief. Is it an allowable inference from the facts? I don't believe so. What if he was just going to watch his son? What if his wife had already gotten there and he was going to meet her, and they were all going to go to dinner? There's all sorts of ways we can speculate about this. The fact is the question was never asked. That evidence isn't before you. So here's another one that suggests that our client sped up at some point. I think that's asserted or alleged or suggested somewhere in the appellate brief. There's no testimony to support that that's admissible. Here's a testimony by, I think it was Mr. Frederick, who didn't see the actual accident and heard that from Mr. King or somebody. He couldn't really say who said it, but somebody said, oh, yeah, he sped up. The only evidence is, as far as my client's speed, was that he was traveling at some range of speed between 15 and 30 miles per hour. That's undisputed. He was somewhere in that range. He remembered from at least the day of the accident when the police officer asked him. He said, I really don't know how fast I was going. I think I was going between 25 and 30. Three years later, when he's deposed, I don't remember. I don't know. I think I was going between 15 and 20. So, Mr. Burke, just a question about this, and it's a sad commentary here, but when I hear someone testifying to actually going half the speed the speed limit allows, did he explain why it was he was driving that speed? Well, I think what he said was at that point when asked, when he saw this vehicle ahead of you pull over and park, he said, yeah, I think I slowed down a little bit. And that was either less than the 30 miles per hour or down to 25 or was less than 20 miles per hour to 15. Other than traffic conditions then existing, it wasn't for the presence of any party in front of a house. It wasn't for the presence of any children nearby. Okay. So he specifically tied his reduced speed to the van pulling over for no other reason? Again, he testified that he could not recall how fast he was going and that he believed, he thought that he may have slowed down a bit. Okay. And that was because he saw this vehicle ahead of his. First he sees the one vehicle parked ahead, but then he sees this other vehicle pulling over and parking. Now, he's two to three car lengths away, and he believes his lane ahead is open and free, and it is. There's nothing obstructing his lane. The vehicle that's pulled over to the curb is parked and stopped, and the vehicle ahead of it is parked and stopped. Regardless of whether or not parking is restricted at that location, parking restrictions and no parking zone doesn't control vehicles traveling on the roadway. And there are many roads throughout the state of Illinois that are not lined for parking, regardless of whether parking is allowed. So in this case, he sees a vehicle parked on the road ahead. He sees another vehicle pull over and park. Nobody's getting out of that vehicle. And perhaps that might give somebody a heightened sense  You want to watch for doors that might open. You certainly can't anticipate somebody appearing to have a number from the front of the vehicle and running into your path. What's the best case scenario for plaintiff in terms of how many people were present on the other side of the street where the party was being held, visible to eastbound traffic? I guess I misunderstand the question. What's the best case scenario for plaintiff in terms of how many people were in front of the house where the party was, visible to eastbound traffic? Relative to giving some sort of notice visible to eastbound traffic. My understanding is there's some testimony that says there were a couple of people in the front lawn. And there may have been somebody on the sidewalk. And that was Mr. Julian who was walking toward his car on the sidewalk. He was headed away from the accident scene, headed back to the accident and just heard it. And as far as where plaintiff was standing, she wasn't really certain. But she thought she had walked to the end of the carriage walk. Now this, I know some of you may be familiar with this area. This Washington Street is not, they're calling it a residential area. And certainly there are houses and big houses along this route. Houses I'd never be able to afford that line this particular stretch of that roadway. But Washington Street is a major thoroughfare through Bloomington. On one end, there's the headquarters of a major insurance company and a major medical center. On the other end, there are a number of law offices that did exist and still exist. And there's a school nearby as well. So it's a busy roadway. It's a thoroughfare that allows somebody to go from the far east side to the far west side of Bloomington. In this particular area, there are houses. These are old houses. They're big houses. And they have, they're probably more than 100 years old. They have carriage walks that run from the sidewalk to the street. And some of you may have vestiges of a place where you can hook up your horse. In this case, the plaintiff said, I think her testimony was, she was on the end of that carriage walk. Now there were photographs that were stipulated to. And one of the photographs depicts what appears to be eastbound, Washington Street, right around the location of this accident. And that depicts not only the carriage walk, but a large telephone pole, or whatever it is, power pole, that sits closer to the drivers, in other words, further west of that carriage walk. And if anybody's standing on the end of that carriage walk, reasonably, they wouldn't be able to see somebody standing there if the pole was in their way. They certainly wouldn't be able to see that person standing there at the carriage walk if a vehicle pulls over and stops and parks. So there was no way that the defendant could have seen the plaintiff at any time before she passed in front of the van. And this is a large van. There was certainly no way that the defendant would be able to perceive the plaintiff standing in front of the van and then running in front of the van until she's running into his path a couple seconds, or a split second before impact, two to three feet away. He had no opportunity to stop or avoid this accident. At the speed he was traveling, regardless of whether it was 15 miles per hour or 30 miles per hour, there just was not enough time. That made this an unavoidable accident. That made the plaintiff, in this case, unable to prove that the approximate cause of her injuries was the defendant's actions. The alternative basis for granting summary judgment was that Francesca was more than 50% contributory at fault. Going back to what her testimony was that Andrew King waved to her, and maybe to start with you can help me here, did she indicate in her testimony that she interpreted that as waving her across the street that it was okay to go, or is that just simply what's being argued as an inference on appeal? I'm sorry, I can't specifically recall whether she admitted that. It indicated that she had observed it, but whether she admitted that she relied on that, I can't recall. Well, what does the evidence tell us here? That he simply waved to her, or that he waved in a manner that she testified she interpreted as being waved across the street? I think the testimony was that she interpreted it as a wave across the street as opposed to I there. Okay, so that would be relevant to the trial court's determination of whether or not she was greater than 50% contributory at fault? I would argue that it would not, and here's why. As far as her ability to cross the road, she testified too. I understand she's 12 years old, but 12 to 13 I thought at the time, but she testified that she had crossed the road many times before. I think every time she crossed, she ran, right? She testified that she had crossed this street that same day and had run across the street. She testified that she had always looked both ways before crossing the street. So she knew what she was doing, and this was supported by her own father's testimony. Well, my question was whether or not it would be relevant. Not how much weight the court should have. I don't think it would be. The court couldn't consider that. Other than, I don't know what I just kicked, but I'm sorry. Other than the further evidence of this particular plaintiff's negligence, her own negligence of improperly relying on that weight. Just like looking and seeing the truck and not looking again and thinking I can make it. That's her contributory fault. And so I guess only to that extent that she improperly relied on the weight. Thank you. Thank you. My time is up. I have no more unless you have more questions. We just ask that you uphold the lower court's ruling. Thank you very much. Thank you, counsel. I'm going to try to fix this real quick. Thanks. Counsel for the appellant. Rebuttal. Thank you, Your Honor. From the facts in the record, the court can make reasonable inferences. The court does not need to draw reasonable inferences. It does not need to strain to make a remote possibility the truth. All it needs to do is not speculate as to what actually happened or what the circumstances were that could have afforded a driver in Brian Whelan's position a better opportunity to look at what was going on. The question is, was it reasonable for Brian Whelan to pass a car in a single lane that afternoon as he drove by? That could point to whether or not he was keeping a proper lookout. The circumstances, again, focus on what is going on at the house, why this van pulled over to stop in front of this house where a lot of things were going on, and was it proper for him, even though he testified to going under the speed limit, within the speed limit, whether it was proper for him to pass. Going back to the area in which it happened, there is a specific no parking sign in front of the house. That's part of the record. There is an explicit indication that no parking was supposed to happen, although there were two cars present. I'm trying to understand why that matters. Because that should put a driver moving on the roadway on alert. Why are there cars stopped there in the no parking lane parked in front of this house? And the houses in the area were only houses. If you move way down on to Washington, outside of where this collision happened, that's irrelevant. We're focusing on this area right here in front of these houses. This is a residential area in the middle of the afternoon. So if the court has no further questions, then plaintiff would request that this matter be reversed and remanded for further proceedings. Thank you, counsel. Thank you. The court will take this matter under advisement. The court stands in recess. Thank you both.